UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JULIO ORTEGA FREDERICK (A# 087-306-411),

Petitioner,

v.

WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER,

Respondent.

No. 1:26-cv-05019 TLN SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee representing himself in this habeas corpus action filed pursuant to 28 U.S.C. § 2241. This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**I. Factual and Procedural History**

**A. Factual Background**

Petitioner is a citizen and national of Panama who entered the United States as a minor in 1990 on a B2 tourist visa. ECF No. 1 at 6. Petitioner has remained continuously in the United States since, works as a certified electrician, and has four U.S.-citizen children. Id. His youngest child has autism and receives speech therapy. Id. Regarding his immigration history, Petitioner alleges around 2006 his ex-wife filed a petition for alien relative (Form I-130) and application for adjustment of status (Form I-485) that was not successful. Id. at 6, 14. He is currently working

with his fiancée and a sponsor (brother-in-law) to attain legal status. Id. at 7, 109-10.

On December 19, 2025, local law enforcement arrested Petitioner for driving with a suspended license. Id.; ECF No. 7-1 at 2 (Form I-213). Petitioner spent 94 days in county jail and was released on March 26, 2026, with adjudication of the charge withheld after posting court fees and traffic penalties. ECF No. 1 at 6, 81-82. It appears that Petitioner was then re-arrested based on a 2024 failure to appear charge and moved to different county jail. Id. at 6; ECF No. 7-1 at 2. Immigration and Customs Enforcement ("ICE") took Petitioner into custody from the jail on or around March 27, 2026. ECF No. 1 at 6; ECF No. 7-1 at 2. Despite Petitioner's visa overstay status, immigration officials issued Petitioner a Notice to Appear ("NTA") administratively charging him under 8 U.S.C. § 1182(a)(6)(A)(i) (noncitizen present without admission or parole) and 1182(a)(7)(A)(i)(I) (noncitizen applying for admission without a valid immigration document). ECF No. 7-1 at 2.

On May 27, 2026, Petitioner received a custody redetermination hearing before an immigration judge ("IJ") pursuant to 8 C.F.R. § 1236.1. ECF No. 7-2. The written decision states in full that bond is denied because Petitioner is a "danger to community, in the alternative [a] flight risk." Id. at 1. ECF No. 7-2. Petitioner reserved appeal, id. at 2, but Respondent maintains that he did not actually appeal.

The undersigned requested the audio transcript of the hearing to ensure a complete record. The hearing lasted about 44 minutes. For the first ten minutes, the IJ addressed the parties' dispute over Petitioner's manner of entry. The IJ determined the statement in Petitioner's I-213 (and repeated in his NTA) that he entered unlawfully was unreliable and concluded Petitioner lawfully entered as a minor in 1990. See ECF No. 12 at 0:00 – 9:49. The IJ then proceeded with the bond hearing. Petitioner's counsel questioned Petitioner under oath for the first portion of the hearing, id. at 9:50–20:35, followed by questioning from the government's counsel, id. at 20:26 – 25:09, and the IJ, id. 25:10 – 34-39. The IJ ultimately determined that Petitioner presented a risk of danger and flight based on his multiple arrests for driving with a suspended license. Id. at 39:05-43:12. The IJ acknowledged that Petitioner has no inclination toward violence, but that driving without a license can lead to more accidents and emphasized his repeat offenses. Id. As

to flight risk, the IJ credited Petitioner's fixed address, length of residence, family ties, and employment history, but found Petitioner's history of failing to appear and traffic-related arrests weighed against bond. Id. The IJ found Petitioner's withholding of removal relief was speculative and a neutral factor. Id.

**B. Procedural History**

Petitioner, proceeding pro se, filed a § 2241 petition on June 29, 2026. ECF No. 1. Petitioner does not raise any specific claims for relief but generally alleges that he is not a danger or flight risk and emphasizes his ongoing efforts to attain legal status and the financial and psychological harm his detention has caused his fiancée and children. Id. at 6-7. The petition seeks immediate release. Id. at 8. Respondent, construing the petition as requesting judicial review of the May 2026 bond decision, argues that the petition should be dismissed for failure to exhaust administrative remedies. ECF No. 7 at 2. Respondent further argues that Petitioner's challenge fails on its merits because he does not explain why the IJ's decision was defective and his detention is not unconstitutionally prolonged. Id.

Due to the complexity of the legal issues involved, the undersigned appointed counsel to Petitioner for the purpose of filing a reply. ECF No. 14. In the counseled reply, Petitioner argues that his arrest and continued detention violate his Fifth Amendment rights, for which the only remedy is his immediate release. As to the arrest, Petitioner alleges Respondent violated his due process rights when they issued the original NTA that erroneously asserted he entered the country unlawfully.[1] Id. at 6-7. Petitioner contends that the Department of Homeland Security ("DHS") withdrew that original NTA on August 25, 2026, cancelled the removal proceeding hearing scheduled for October 2, 2026, and has not rescheduled it. ECF No. 16 at 5-7. Petitioner further states an IJ ordered DHS to provide an amended NTA prior to the hearing that occurred on July 30, 2026, but it failed to do so. ECF No. 17 at 7.

Petitioner also argues that the IJ abused his discretion in denying his release on bond.

---

[1] In his pro se motion for temporary restraining order filed shortly before his counseled reply, Petitioner attached both the original NTA dated March 27, 2026, and the amended NTA dated August 25, 2026. ECF No. 16 at 5-7.

Specifically, he argues that the IJ failed to hold the government to its burden of establishing Petitioner's risk of danger or flight by clear and convincing evidence. Id. at 7-9.

## II. Legal Standard

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

## III. Due Process Analysis

### A. Challenge to Original NTA

The undersigned liberally construes the petition as raising a due process challenge to the government's issuance of the original, "faulty" NTA dated March 27, 2026. ECF No. 17 at 2; see also Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (courts must "construe *pro se* habeas filings liberally"). "[An NTA] is the typical charging document that initiates removal

proceedings before an immigration judge." Giancarlo A.M. v. California City Warden, No. 1:26-CV-4036-TLN-CSK, 2026 WL 2836725, at *2 (E.D. Cal. Sept. 22, 2026) (citing 8 C.F.R. § 1003.13); see also Loaeza v. Bausch, 26-CV-00945-MAV, 2026 WL 2150155 (W.D.N.Y. July 27, 2026), at *1 ("The [NTA] 'is the immigration version of a "charging instrument"' and 'begins the removal process.'" (quoting Yeleshev v. Larocco, No. 26-CV-2294-SJB, 2026 WL 1353806, at *2 (E.D.N.Y. May 14, 2026))). "[W]ithout a valid NTA initiating removal proceedings against a noncitizen, the noncitizen is not pending a decision on whether they are to be removed, and the government has no authority under § 1226(a) to arrest and detain them." Giancarlo A.M., 2026 WL 2836725, at *2.

The original NTA dated March 27, 2026, was factually inaccurate and, as a result, legally deficient. An NTA must, *inter alia*, specify "[t]he legal authority under which the [removal] proceedings are conducted" and "[t]he acts or conduct alleged to be in violation of law." 8 U.S.C. § 1229(a)(1)(B)-(C); see also 8 C.F.R. § 1003.15(b)(3)-(4). Here, the NTA inaccurately stated that Petitioner entered the United States without inspection and administratively charged him as inadmissible pursuant to 8 U.S.C. § 1182(a)(6) and (7), ECF No. 16 at 5, two provisions that are inapplicable to noncitizens who were admitted to the United States but overstayed visas.

As explained below, the undersigned finds that Petitioner's arrest and roughly five months of detention on the original NTA (March 27, 2026, to August 25, 2026) violated his procedural due process rights. First, Petitioner had a protected liberty interest in remaining free from custody based on his significant family and community ties developed over his 36 years in the United States and the government's decision not to detain him after the expiration of his visa:

> [W]here, as here, a noncitizen builds a life in the United States after being granted entry pursuant to a visa—such that the government was not only aware of but *approved of* the noncitizen's initial presence in the country—that noncitizen develops a vested liberty interest in remaining free from detention when the government does not act to detain the noncitizen pursuant to 8 U.S.C. § 1227(a) and § 1226(a) within a reasonable time following the expiration of their nonimmigrant status.

Oliveira Tinoco v. Albarran, et al., No. 1:26-CV-05505-DC-CKD (HC), 2026 WL 2949219, at *5 (E.D. Cal. Oct. 1, 2026) (emphasis in original). DHS's rejection of Petitioner's applications for immigration relief in 2006, see ECF No. 1 at 6, further evince its knowledge and tacit approval of

his presence in the country. See Gagik T. v. Chestnut, et al., No. 1:26-cv-04337-MWJS, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) ("[Where] the Government ha[s] made a decision not to detain" a noncitizen "in the first place" after the filing of an application for immigration benefits, "this decision vest[s] the same liberty interest as a prior detention and release." (quoting Kharitonova v. Albarran, No. 3:26-cv-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026))).

**Private Interest:** Turning to the Mathews factors, the first factor unquestionably tilts in Petitioner's favor because he has a clear interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (citation omitted). As established above, Petitioner was at liberty for over 36 years before being detained in this case and raised four children and maintained stable employment. See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025) (finding in the past two years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty.").

**Erroneous Deprivation:** The risk of erroneous deprivation strongly weighs in Petitioner's favor. Although Respondent acknowledges Petitioner is now detained under § 1226(a), ECF No. 7 at 1, ICE arrested Petitioner pursuant to the mandatory detention scheme at 8 U.S.C. § 1225(b) in reliance on the inaccurate NTA. At that time,[2] the BIA's binding decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 221-22 (BIA 2025), interpreted § 1225(b) as applying to noncitizens who entered the United States without inspection. Petitioner's initial § 1225(b) status is especially evident from the May 2026 bond hearing, where Petitioner's counsel offered evidence on Petitioner's visa overstay status at the start of the hearing. See ECF No. 12. This was necessary because § 1225(b), via Yajure Hurtado, otherwise barred the IJ from considering Petitioner's release on bond.

Had DHS properly charged Petitioner pursuant to § 1227(a)(1)(B) from the beginning, his

---

[2] Petitioner's arrest occurred prior to the Ninth Circuit's July 30, 2026, ruling in Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026), that noncitizens detained in the interior of the United States are subject to the discretionary detention scheme at § 1226(a), not the mandatory detention scheme at § 1225(b).

entitlement to a § 1226(a) hearing would have been clear. See Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (explaining that § 1226(a) governs the detention noncitizens removable under § 1227(a)(1)). In other words, but for the NTA's mischaracterization of Petitioner as entering without inspection, Petitioner would have received § 1226(a)'s procedural protections at the start of his detention instead of several months later. This constitutes its own due process violation. See Huerta Huerta v. Warden of the Golden State Annex Det. Facility, No. 1:26-CV-02301-DAD-CSK, 2026 WL 1552359, at *1-*2 (E.D. Cal. June 2, 2026) (finding due process violation where § 1226(a) detainee was denied the statute's procedural safeguards for a similar length of time); Feng v. Lyons, No. 1:26-cv-00235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (same); Charan S. v. Warden of the California City Det. Facility, No. 1:26-CV-03017-TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) (holding a post-deprivation § 1226(a) hearing "does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months").

The faulty NTA has also prolonged Petitioner's detention. Despite receiving notice of Petitioner's visa overstay status through the IJ's bond hearing decision on May 27, 2026, DHS did not issue a superseding NTA with the correct factual background and administrative charge until August 25, 2026. ECF No. 16 at 6-8. The superseding NTA caused the immigration court to vacate the hearing in Petitioner's removal proceedings scheduled for October 2, 2026, and Petitioner's EOIR Case Information Page reflects that no future hearings have been scheduled as of the date of this order.[3] See https://acis.eoir.justice.gov/en/caseInformation. Thus, the government's issuance of the original, deficient NTA has unquestionably delayed Petitioner's removal proceedings and extended his detention, which has now become prolonged. See Rodriguez Diaz, 53 F.4th at 1214 (leaving open as-applied challenges where the § 1226(a) detention becomes "unreasonably prolonged, whether by virtue of government delay or some other cause" (quoting Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 280 (3d Cir. 2018))). For these reasons, the undersigned finds that the second Mathews factor tilts firmly

[3] The undersigned takes judicial notice of Petitioner's EOIR Case Information Page. Fed. R. Evid. 201(b)-(c).

toward Petitioner.[4]

**Government Interest:** The undersigned finds the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. "[T]he procedural safeguards that Petitioner was deprived of are statutorily required and therefore, the government regularly provides such procedures and their interest in detaining Petitioner absent such procedures is low." See Mudiyanselage v. Warden California City Det. Facility, No. 1:26-CV-02969-DAD-DMC-HC, 2026 WL 2364505, at *6 (E.D. Cal. Aug. 14, 2026) (finding due process violation where the petitioner was detained under the authority of a "legally insufficient" NTA for 205 days), report and recommendation adopted, No. 1:26-CV-02969-DAD-DMC (HC), 2026 WL 2495014 (E.D. Cal. Aug. 25, 2026). In sum, the undersigned finds that the Mathews factors weigh in favor of finding a due process violation.

**B. Remedy**

The remedy for this procedural due process violation is release. See Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility, No. 1:26-CV-05661-DAD-SCR (HC), 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026) (identifying the issuance of a legally deficient NTA as a § 1226(a) procedural violation justifying release) (citing Loaeza, 2026 WL 2150155, at *1–2); Giancarlo A.M., 2026 WL 2836725, at *3 (same). Petitioner's receipt of a § 1226(a) hearing several months into his detention does displace this due process remedy. See Giancarlo A.M., 2026 WL 2836725, at *3 ("The subsequent custody redetermination hearing provided to Petitioner does not cure detention that has been unlawful from its inception."); Charan S., 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) (same). In the interests of judicial economy,

---

[4] Setting aside the deficient NTA, numerous courts have found Petitioner's protected liberty interest gained when the government took no action to detain him for years after his visa expired warrants a pre-deprivation remedy. See Oliveira Tinoco, 2026 WL 2949219, at *6; Gagik T., No. 1:26-CV-04337-MWJS, 2026 WL 1837413, at *4; Kalkan v. Chestnut, No. 1:26-CV-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026), appeal dismissed, No. 26-3277, 2026 WL 2446315 (9th Cir. June 18, 2026). Courts have done so even when, as here, the Petitioner received a post-deprivation, § 1226(a) hearing. See Oliveira Tinoco, 2026 WL 2949219, at *6 (questioning "the adequacy of the post-deprivation process . . . in the face of a constitutional due process challenge," and finding second Mathews factor favored the petitioner). DHS' failure to provide Petitioner with a pre-deprivation hearing before his arrest further contributes to the high risk of erroneous deprivation present here.

Petitioner's remaining claims are not addressed herein.[5]

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus be GRANTED;

2. Respondent be ordered to immediately release Petitioner JULIO ORTEGA FREDERICK (A# 087-306-411) from its custody.

3. Respondents may place Petitioner on standard conditions of supervision upon release.

4. At the time of release, Respondents be required to return all of Petitioner's documents and possessions.

5. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days notice to Petitioner and provide Petitioner with a bond hearing before an immigration judge at which the government must prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community such that his re-detention is warranted.

6. The Clerk be directed to serve the California City Immigration Processing Center with any order of release issued in this case.

7. Petitioner's motion for release (ECF No. 9) and motion for temporary restraining order (ECF No. 16) be DENIED as moot.

8. The final order entered in this case not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

9. The Clerk of Court be directed to:

   a. Serve a copy of the final order in this case on the California City Immigration Processing Center; and

---

[5] The undersigned briefly notes that Petitioner's argument that the IJ did not hold the government to its burden is unconvincing given that Petitioner bore the burden of proof in the generic § 1226(a) hearing. See Rodriguez Diaz, 53 F.4th at 1210-12. For this reason, the undersigned need not address Respondent's exhaustion arguments. See Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997) (holding a court can elect not to decide a procedural bar issue when a claim can be readily resolved on the merits).

b. Enter judgment for Petitioner and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 26, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE